**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RAMPARTS, INC., ) | Case No.: 2:10-cv-01665-GMN-RJJ |
| ) | |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| ) | |
| THOMAS D. WELDON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

Before the Court is Defendant Thomas D. Weldon's Motion to Dismiss for Lack of Personal Jurisdiction or in the alternative to Transfer Venue (ECF No. 8). Plaintiff Ramparts, Inc. filed a Response (ECF No. 14) and Defendant filed a Reply (ECF No. 19).

## FACTS

This suit arises out of an allegedly fraudulent registration of a trademark and subsequent negotiations of a concurrent use agreement. Plaintiff Thomas D. Weldon is an individual who lived in Fernandina Beach, Florida.(First Amended Complaint ¶3, ECF No. 13.) Weldon filed an intent-to-use U.S. trademark application of LIQUIDITY for use in connection with red wine in International Class 33 on April 29, 2006. (*Id.* at ¶6.) Luxor is a resort hotel and casino located in Las Vegas, Nevada which is owned by Defendant Ramparts. (*Id.* at ¶2.) On May 16, 2006, Luxor filed an intent-to-use U.S. trademark application for LIQUIDITY for bar services in International Class 41. (*Id.* at ¶7.) On December 5, 2006, Luxor filed a request for an extension of time to oppose Weldon's registration of the LIQUIDITY mark. (*Id.* at ¶8.)

Beginning in January 2007 and continuing until June 2007, Luxor and Weldon engaged in negotiations of a concurrent use agreement of the LIQUIDITY mark for their respective

services. (*Id.* at ¶9.) Luxor decided not to file an opposition to Weldon's application to register the mark in reliance on the representations made by Weldon during the course of negotiations. (*Id.*) Although Plaintiff alleges that an oral agreement in principal was obtained, the final agreement was never reduced to writing and signed. (*Id.* at ¶12.) On June 18, 2007, disappointed that the agreement would not be signed, Luxor informed Weldon that it had relied on the agreement by continuing to expend money to use the mark and in foregoing its opposition to Weldon's registration of the mark. (*Id.* at ¶13.) On December 26, 2007, Luxor opened the LIQUIDITY bar/lounge venue in the center of the casino floor at the Luxor. (*Id.* at ¶ 15.)

On April 29, 2008, the United States Patent and Trademark Office issued U.S. registration number 3,420,502 for the LIQUIDITY mark for red wine to Weldon. (*Id.* at 16.) On July 23, 2009, Luxor again filed federal trademark applications for the LIQUIDITY mark this time in International Classes 41 and 43. (*Id.* at ¶18.) Luxor then filed a petition to cancel Weldon's registration for the LIQUIDITY mark on September 20, 2009. (*Id.* at ¶19.) Weldon answered the petition to cancel on November 9, 2009 and subsequently sent a letter to Luxor to "cease and desist from using" the mark on February 25, 2010. (*Id.* at ¶¶20–21.)

Plaintiff filed the instant suit on September 27, 2010 alleging two causes of action: (1) false or fraudulent registration under 15 U.S.C. § 1120; and (2) promissory estoppel. Plaintiff then filed an amended complaint ("FAC") adding causes of action for fraud and breach of contract.

## DISCUSSION

### A. Personal Jurisdiction

A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Personal jurisdiction over a nonresident defendant is established when a two-part test is satisfied. First, there must be personal jurisdiction under the laws of the state where it is asserted. *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). Second, the

exercise of jurisdiction must satisfy due process. U.S. Const. amend XIV, 1; *Chan*, 39 F.3d at 1404–05.

For a non-resident defendant, the assertion of jurisdiction is constitutionally proper under the Due Process Clause of the Fourteenth Amendment only where there are continuous and systematic contacts with the forum state (general jurisdiction), *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009), or when there are sufficient minimal contacts with the forum state such that the assertion of personal jurisdiction does not offend traditional notions of fair play and substantial justice (specific jurisdiction), *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Plaintiff does not contend that Defendant's contacts meet the requirements of general personal jurisdiction. Therefore the Court will apply the test for specific jurisdiction and determine whether Defendant had sufficient minimum contacts with the District of Nevada.

### 1. Specific Jurisdiction

The Ninth Circuit employ's a three-part test to determine whether the exercise of specific jurisdiction satisfies the requirements of due process: (1) the defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim must arise out of that activity; and (3) the exercise of jurisdiction must be reasonable. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 111 (9th Cir. 2002).

#### a. Purposeful Availment or Direction

Under the first prong of the Ninth Circuit test the defendant must have either (1) "purposefully availed" himself of the privilege of conducting activities in the forum, or (2) "purposefully directed" his activities toward the forum. *Schwarzenegger v. Fred Martin*

*Motor Company*, 374 F.3d 797, 802 (9th Cir. 2004).  A purposeful availment analysis is most often used in suits sounding in contract while a purposeful direction analysis is most often used in suits sounding in tort. *Id.* The Plaintiff in this case alleges causes of action sounding in both contract and tort.

### i.  Purposeful Availment

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)).  Plaintiff argues that Defendant purposefully availed himself of the privilege of doing business in Nevada because he engaged in contract negotiations with Plaintiff from January 2007 until June 2007.  Plaintiff alleges that the Luxor and Weldon engaged in extensive negotiations of a concurrent use agreement for the LIQUIDITY mark for their respective goods and services." (FAC at ¶9.) "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' 'additional course of dealing' are factors that may establish purposeful availment." *Hoag v. Sweetwater Int'l*, 857 F. Supp. 1420, 1425–1426 (D.Nev. 1994) (quoting *Burger KingCorp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174 (1985)).  Plaintiff alleges that as a result of the negotiations a concurrent use agreement was formed, whereby Luxor could use the trademark in Nevada in connection with Luxor's Liquidity Bar & Lounge at the Luxor Hotel & Casino and Weldon would use the trademark for wine only. (FAC at ¶¶10, 15.) Plaintiff argues that this relationship "envisioned continuing and wide-reaching contacts" with Weldon in Nevada. *See Burger King*, 471 U.S. at 480 (A contract that envisioned continuing and wide-reaching contacts with the forum established that out of state defendant purposefully availed himself of the jurisdiction in the forum).

Defendant argues that he has not purposefully availed himself of the privilege of doing

business in Nevada.  Defendant argues that the contact that forms the basis of personal jurisdiction over him cannot be the alleged oral contract because this is no more than a legal conclusion.  Plaintiff alleges that "Luxor and Weldon reached an oral agreement in principle by which Weldon would use the LIQUIDITY mark for red wine and Luxor would use the LIQUIDITY mark for bar and lounge services." (FAC at ¶10.)  Defendant argues that even if an oral agreement was in fact entered between the parties, which he denies, it would be barred as a matter of law under the statute of frauds.  The statute of frauds "precludes enforcement" of an oral agreement that cannot be performed within one year. *See Edwards Industries, Inc. v.DTE/BTE, Inc.,* 112 Nev. 1025, 1032, 923 P.2d 569,573 (1996).  Plaintiff's allegations that it would use the trademark in connection with its bar and lounge leads to the inevitable conclusion that the contract would be in effect for more than one year.  Plaintiff's description of the oral agreement also leads to the conclusion that the agreement was to last for more than a year. (*See* Response 9:5–8, ECF No. 14 "the concurrent use agreement envisioned Weldon having continuing and extensive contacts with Nevada [because] [p]arties to a concurrent use agreement should monitor compliance with the agreement on an ongoing basis.".)

    The Court agrees with Defendant that the alleged oral agreement/contract between the two parties cannot establish the basis for personal jurisdiction because the allegation is no more than a legal conclusion.  "The tenet that a court must accept as true all allegations is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2006)(Although for purposes of a motion to dismiss we must take all factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched in a factual allegation").

        ii.    Purposeful Direction

    The Court will now consider whether the Defendant "purposefully directed" his activities toward the forum.  Purposeful direction is determined under the "effects" test of *Calder v. Jones*,

465 U.S. 783, 789–90 (1983).  "Under *Calder* the 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803.  Cases following *Calder* have explained that the "effects" test is not satisfied merely by a foreign act with foreseeable effects in the forum; there must be "something more"–namely, "express aiming" at the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing *Calder*, 465 U.S. at 789).

  Plaintiff argues that Defendant's false statements to Luxor, that he was in agreement with Luxor's use of the LIQUIDITY mark in Nevada, was an intentional act expressly aimed at the forum that harmed Plaintiff in the forum.  Plaintiff alleges that if not for Defendant's alleged consent, Luxor would not have continued to expend money and proceed to develop the use of the LIQUIDITY mark and would not have withdrawn its opposition to Weldon's registration of the mark.

  Defendant argues however, that his conduct was not expressly aimed at the forum. Defendant claims that his counsel, John C. Gaydos, was contacted by Plaintiff's attorney sometime in January 2007 to discuss Luxor's opposition to Weldon's trademark application. (Gaydos Decl. Ex. C ¶8, ECF No. 19.)  Plaintiff's counsel then e-mailed an agreement to Defendant for him to sign granting Plaintiff certain rights to the mark to avoid future litigation. (*Id*. at ¶11.)  Following this e-mail the parties entered in to settlement discussions that lasted until June 2007. (*Id.* at ¶¶ 13–17.)  Defendant argues that the contract negotiations that took place were actually nothing more than settlement negotiations to avoid litigation.

  Although it is an issue of first impression in Nevada, other jurisdictions have held that settlement negotiations and accompanying correspondence do not suffice to create sufficient contact for the exercise of personal jurisdiction. *In re Shipowners Litigation*, 361 N.W.2d 112 (Minn.App. 1985) (citing *Washington Sci. Indus., Inc. v. Polan Indus., Inc.*, 302 F.Supp. 1354,

1358 (D.Minn. 1969). The court in *In re Shipowners* found that to allow personal jurisdiction to attach when the defendants came to the forum state at the request of the plaintiff to discuss a possible settlement of their contract difference would amount to a form of civil entrapment. *Id.* at 115. Other jurisdictions have also held that an out of state defendant's contacts with the forum state for purposes of settlement negotiations does not amount to "purposeful availment" for purposes of finding personal jurisdiction over the defendant. *See Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1360–1361 (Fed.Cir.1998) (Offer for a license within a cease and desist letter likened to offer of settlement, and alone, does not confer personal jurisdiction); *Digi–Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.*, 89 F.3d 519, 524–525 (8th Cir.1996) ("courts have hesitated to use unsuccessful settlement discussions as 'contacts' for jurisdictional purposes"); *Smith Architectural Metals, LLC v. Am. Railing Sys., Inc.,* 698 S.E.2d 752, 756 (Ct.App. N.C. 2010)("[I]f every offer to compromise and promote peace is used as a contact to establish personal jurisdiction in this State over the party who presents it, 'many settlements would be prevented, and unnecessary litigation would be produced and prolonged.'" (citing *Hammond Packing Co. v. Dickey*, 183 F.977, 978 (8th Cir. 1911)).

Likewise, this Court is hesitant to confer jurisdiction based on conduct which Defendant characterizes as a settlement negotiation not a business negotiation. Plaintiff claims that it was during the course of this negotiation that Defendant made false statements that induced Plaintiff to continue to spend money to promote a mark that it did not yet have rights to use. Defendant establishes, and Plaintiff does not deny, that it was Plaintiff who first contacted Defendant to discuss the concurrent use agreement. While an on-going business relationship was discussed and probably contemplated, it is apparent that at some point these negotiations broke down. (*See* e-mail, Ex. G, ECF No. 19.) The court finds that the negotiation itself, including any communications and false statements that may have or may not have occurred, is not enough to satisfy the expressly aimed prong of specific personal jurisdiction.

Courts have long recognized, public policy strongly encourages settlement outside of litigation. *See Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988). A person who takes the proper steps to register a trademark should not fear being hauled into a foreign court merely because he entertains an offer to enter into a concurrent use agreement. Moreover, the trademark owner should not be threatened with some adverse action if he refuses to accept the business offer; he should not be punished for attempting to prevent future infringement litigation. Allowing such contact to qualify as "purposeful direction" would motivate a potential infringer to feign interest in an agreement merely to establish the minimum contacts necessary to bring the suit in their own forum or to threaten litigation in a foreign court if a bonafide offer is rejected by the trademark owner. These risks would clearly discourage pre-trial negotiations since the trademark owner would be best served by waiting until after the suit is filed and the jurisdiction is established prior to contemplating any coexistence agreements. Accordingly, the Court finds that Defendant's contacts with the forum were not "expressly aimed" at the forum. Therefore, this Court does not have personal jurisdiction over Defendant and this case should be dismissed.[1]

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Thomas D. Weldon's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 8) is **GRANTED**.

DATED this 28th day of September, 2011.

_____
Gloria M. Navarro
United States District Judge

---

[1] The Court denies Plaintiff's request for jurisdictional discovery.